ELIZABETH J. ARLEO (201730)
ARLEO LAW FIRM, PLC
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
(858) 674-6912
(760) 789-8081 (fax)
elizabeth@arleolaw.com

AZRA Z. MEHDI (220406)
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 (fax)
azram@themehdifirm.com

Attorneys for Plaintiffs

[additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TERRY J. FANNING, et al.,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>HSBC CARD SERVICES INC., et al.,<br><br>                    Defendants. | Case No.: SACV 12-00885 JVS-RNB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF STANDING; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         March 31, 2014<br>Time:         1:30 p.m.<br>Courtroom:  The Hon. James V. Selna |

**TO THE COURT, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 31, 2014, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 10C of the above-entitled Court, located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701-4516, plaintiffs Terry J. Fanning ("Fanning") and Tatiana Jabbar will, and hereby do, move for an order granting partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and the Court's November 19, 2013 Order (ECF No. 199) on the issue of plaintiffs' standing.  Plaintiffs move on the ground that there is no genuine dispute of material fact, and plaintiffs are entitled to an order or finding as a matter of law that plaintiff Fanning has standing to pursue this litigation, based on the following:

1.  Defendants HSBC Card Services Inc. ("Card Services") and HSBC Technology & Services (USA) Inc. made outbound collection calls to Fanning during October 2, 2010 through December 15, 2010 about Fanning's credit card account with HSBC Bank Nevada, N.A. assigned account number ending 3663.

2.  As a result of these outbound calls, Card Services' representatives engaged in telephone conversations with Fanning on October 7, 2010 and October 12, 2010.

3.  Defendants electronically recorded the October 7, 2010 and October 12, 2010 telephone conversations with Fanning.

4.  The telephone conversations were confidential communications.

5.  Fanning, a California individual, did not consent to the electronic recordings.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Elizabeth J. Arleo and all evidence attached thereto, the Declaration of Terry J. Fanning, and

Plaintiffs' Motion for Sanctions for the Spoliation of Evidence filed concurrently herewith, the pleadings and records on file herein, such further papers as may be filed in connection with this Motion and such other evidence and arguments as may be presented to the Court in connection with the hearing on the Motion.

This Motion is made following the conferences of counsel pursuant to L.R. 7–3, which began on November 19, 2013 and January 13, 2014 (discovery hearings), the exchanges of emails throughout February 2014 concerning document production and submission, and letters exchanged on February 18, 2014, February 24, 2014 and February 27, 2014.

DATED: March 3, 2014                    ARLEO LAW FIRM, PLC

                                        *s/Elizabeth J. Arleo*
                                        ELIZABETH J. ARLEO

                                        16870 West Bernardo Drive, Suite 400
                                        San Diego, CA  92127
                                        (858) 674-6912
                                        (760) 789-8081 (fax)
                                        elizabeth@arleolaw.com

                                        AZRA Z. MEHDI
                                        THE MEHDI FIRM, PC
                                        One Market
                                        Spear Tower, Suite 3600
                                        San Francisco, CA 94105
                                        (415) 293-8039
                                        (415) 293-8001 (fax)
                                        azram@themehdifirm.com

                                        STEPHEN C. MAXWELL (phv)
                                        RANDALL E. TURNER (phv)
                                        BAILEY & GALYEN
                                        1300 Summit Avenue, Suite 650
                                        Ft. Worth, TX 76021
                                        (817) 417-9660
                                        (817) 719-9484 (fax)
                                        smaxwell@gaylen.com
                                        rturner@gaylen.com

                                        Attorneys for Plaintiffs

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................    1

II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ..    2

III.  STANDARDS GOVERNING SUMMARY JUDGMENT ................    5

IV.   PLAINTIFF FANNING HAS STANDING BECAUSE HE
      SUFFERED AN INJURY-IN-FACT ....................................................    6

      A.    Defendants Made Outbound Calls to Fanning Resulting in
            Telephone Conversations with Card Services' Representatives
            about Fanning's Credit Card Account .......................................    8

      B.    Fanning's Telephone Conversations with Card Services'
            Representatives Were Confidential Communications ................    9

      C.    Defendants Recorded Fanning's Telephone Conversations .......    11

      D.    Fanning Did Not Consent to the Recordings .............................    13

IV.   CONCLUSION ....................................................................    15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*America Online, Inc. v. Superior Court,*
    90 Cal. App. 4th 1 (2001) .................................................................................. 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................. 5, 6

*Bailey v. Household Finance Corp.,*
    No. 10-cv-00857 WQH RBB (S.D. Cal.) ......................................................*passim*

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................................. 5, 6

*Flanagan v. Flanagan,*
    27 Cal. 4th 766 (2002) ..................................................................................... 7, 9

*Ion Equip. Corp. v. Nelson,*
    110 Cal. App. 3d 868 (1st Dist. 1980) .................................................................. 7

*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95 (2006) ..................................................................................... 10, 11

*Kight v. Cash Call, Inc.,*
    200 Cal. App. 4th 1377 (2011) ....................................................................... 9, 11

*Lieberman v. KCOP Television, Inc.,*
    110 Cal App 4th 156 (2d Dist. 2003) .................................................................... 7

*Lies v. Farrell Lines, Inc.,*
    641 F.2d 765 (9th Cir. 1981) ................................................................................ 5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 351 (1992) ........................................ 6

*Membrila v. Receivables Performance Mgmt., LLC,*
    No. 09-CV-2790-IEG (RBB), 2010 U.S. Dist. LEXIS 33565
    (S.D. Cal. Apr. 6, 2010) ..................................................................................... 10

*Ribas v. Clark,*
    38 Cal. 3d 355 (1985) ........................................................................................ 10

*Ryman v. Sears Roebuck & Co.*,
    505 F.3d 993 (9th Cir. 2007) ............................................................... 11

*Shulman v. Group W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ...................................................................... 10

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) .............................................................. 10

**Statutes**

Cal. Penal Code §630 .............................................................................. 7

Cal. Penal Code §632 .............................................................................. 7

Cal. Penal Code §632(c) .......................................................................... 9

Cal. Penal Code §637.2 ........................................................................... 7

California Civil Code §1668 ..................................................................... 14

**Rules**

Fed. R. Civ. P. 30(b)(6) ..................................................................... 4, 10

Fed. R. Civ. P. 56 .......................................................................... 1, 5, 6

Fed. R. Civ. P. 56(a) ......................................................................... 5, 6

Fed. R. Civ. P. 56(c) ............................................................................. 5

Fed. R. Civ. P. 56(e)(2) .......................................................................... 6

Fed. R. Civ. P. 56(g) .............................................................................. 6

Fed. R. Evid. 801(d)(2) ........................................................................... 5

L.R. 56-3 ............................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Terry J. Fanning ("Fanning") and Tatiana Jabbar's ("Jabbar") class action complaint was filed on June 4, 2012, alleging that defendants HSBC Card Services Inc. ("Card Services") and HSBC Technology & Services (USA) Inc. ("Tech Services") (referred to hereinafter collectively as the "defendants") violated the California Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), by calling plaintiffs and secretly recording those confidential communications without consent.  ECF No. 1.  Defendants contend plaintiffs lack standing because defendants are unable to locate any evidence indicating plaintiffs' conversations were recorded.  Pursuant to the Court's November 19, 2013 Order, plaintiffs move this Court pursuant to Fed. R. Civ. P. 56, for partial summary judgment on the issue of plaintiffs' standing.

Plaintiffs have limited their arguments to two telephone conversations between Fanning and Card Services' representatives which occurred on October 7, 2010 and October 12, 2010.[1]  There can be no dispute that conversations occurred on those dates.  Nor can defendants credibly dispute that Fanning was ever notified the calls would be recorded.  Defendants have stipulated on the record that no verbal advisory was provided by Card Services during the calls.  Denying defendants' motion for summary judgment on May 6, 2013, this Court held that cardmember agreements ("CMAs") between HSBC Bank Nevada N.A. ("HSBC Nevada") and its customers do not provide notice that defendants were recording conversations.  Because defendants secretly recorded Fanning's conversations, he

---

[1] Because of the lack of evidence concerning defendants' calls to plaintiff Jabbar, plaintiffs do not have sufficient information to take a position about whether defendants recorded telephone conversations with plaintiff Jabbar in 2009.

1  could not have consented and he had a reasonable expectation of privacy that the

2  conversations would not be recorded.

3       Defendants admit there was a 3%–30% chance that the conversations were

4  recorded.  Defendants will dispute they electronically recorded the telephone

5  conversations between Fanning and Card Services.  Defendants contend they are

6  unable to find any records of recordings.  However, defendants also admit they

7  destroyed recordings and records of any recordings in April 2012 while on notice

8  of this lawsuit.  The destruction of evidence occurred despite receiving a

9  preservation letter from plaintiffs' counsel notifying defendants about this

10 impending lawsuit and after another class action lawsuit alleging CIPA claims had

11 been filed against HSBC Bank USA, N.A. and HSBC Nevada.

12      On May 1, 2012, Card Services sold substantially all of its assets to Capital

13 One Financial Corporation ("Capital One").  As set forth in the accompanying

14 Motion of Plaintiffs for Sanctions for the Spoliation of Evidence, plaintiffs contend

15 that defendants' intentional and willful destruction of relevant evidence, only one

16 month prior to the transfer of Card Services' business to Capital One, warrants

17 adverse inferences and treatment of facts as established that Fanning's

18 conversations were recorded and sanctions precluding defendants from now

19 offering any evidence to show no recordings were made of Fanning's

20 conversations.

21 **II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

22      Defendants answered the complaint on July 20, 2012.  ECF No. 8.  With

23 some exceptions, discovery has been ongoing and the parties have met with

24 Magistrate Judge Block on many occasions.  On December 19, 2012, Judge Block

25 ruled that the relevant time period for plaintiffs' claims is March 23, 2009 through

26 May 1, 2012 and that only recordings of conversations between representatives of

27 Card Services and plaintiffs were relevant.  ECF No. 47.  On May 6, 2013, this

28 Court denied defendants' motion for summary judgment asserting preemption and

recording consent arguments based on language of purported CMAs with HSBC Nevada.  ECF No. 119.

Discovery conferences with Judge Block resulted in the production of an electronically recorded conversation with putative class member Stefan O. Lindgren ("Lindgren").  On October 7, 2013, Lindgren filed his motion to intervene as a plaintiff and proposed class representative.  ECF No. 177. Defendants opposed Lindgren's motion by contending that plaintiffs Fanning and Jabbar lack standing because defendants are "unable to locate any recordings associated with" and are not "aware of any records associated with either plaintiff" Fanning or Jabbar.  ECF No. 184 at 2:10–11 (defendants' opposition memorandum); ECF Nos. 184–2, ¶¶4–5 and 184–3, ¶11 (declarations in support). Finding Lindgren presented no facts to rebut defendants' contention, on November 19, 2013, this Court denied Lindgren's motion to intervene without prejudice pending resubmission when the standing of the named plaintiffs has been determined.  ECF No. 199.  The Court stayed the action except for discovery and motions practice going to the issue of plaintiffs' standing and ordered the parties to file any dispositive motions on the standing issue on or before March 3, 2014.  *Id.*

After meeting with Judge Block on November 19, 2013 (ECF No. 195), plaintiffs served defendants with interrogatories on the issue of plaintiffs' standing. Defendants responded on December 23, 2013.  Among other things, the responses confirmed that on or after May 1, 2012, recordings and customer databases were transferred to Capital One.[2]

---

[2] *See* Defendant HSBC Card Services Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, responses to Interrogatory Nos. S9-S10, attached to Arleo Decl. as Ex. 9; Defendant HSBC Technology & Services (USA) Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, responses to Interrogatory Nos. S9-S10, attached to Arleo Decl. as Ex. 10; Transcript of testimony by Todd E. Folkes during his deposition on January 10, 2013 ("Folkes 2013 Dep."), at pages 40, 68 and 113-14, attached to Arleo Decl. as Ex. 6.

After meeting again with the parties on January 13, 2014, Judge Block allowed plaintiffs to propound a subpoena on Capital One seeking documents limited to the issue of plaintiffs' standing, including autodialer logs and account notes related to plaintiffs Fanning and Jabbar.  ECF No. 213.  During February 2014, Capital One returned account notes concerning both plaintiffs and autodialer logs concerning Fanning.  The documents confirmed that defendants' autodialer initiated over 300 calls to Fanning in late 2010, and that Card Services' representatives spoke to Fanning on October 7, 2010 and October 12, 2010.  *See* CAP ONE 000022–28 and CAP ONE 000057–58 which are the subject of Plaintiffs' Application to File Under Seal, filed concurrently herewith.

Also relevant to this case is a prior lawsuit alleging CIPA claims — *Bailey v. Household Finance Corp.*, No. 10-cv-00857 WQH RBB (S.D. Cal.).  *Bailey* was filed on March 23, 2010 naming Household Finance Corporation of California and Does 1–10 and amended on June 7, 2010 identifying Card Services, among other HSBC Holdings, plc entities, as Doe defendants 2–4.  In May 2010, defendants in *Bailey* filed an *Ex Parte* Application for Order Regarding Preservation of Electronic Recordings of Telephone Calls.  The hearing on that motion resulted in what is now referred to as the *Bailey* Protocol, wherein defendants agreed to preserve a portion of the recordings specifically for plaintiff's counsel in the *Bailey* litigation.[3]

In addition to providing declarations, defendants' employees were deposed individually and as Rule 30(b)(6) designees in the *Bailey* lawsuit.  The declarations submitted by defendants in *Bailey* and the relevant excerpts of the deposition

---

[3] *See* Defendant HSBC Card Services Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as Ex. 9; Defendant HSBC Technology & Services (USA) Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as Ex. 10; Transcript of May 20, 2010 Hearing in the *Bailey* Lawsuit, at 28:7-9, 30:20-31:5, 36:24-37:6, attached to Arleo MPSJ Decl. as Ex. 2.

transcripts are attached to the accompanying Declaration of Elizabeth J. Arleo ("Arleo Decl.") pursuant to Fed. R. Evid. 801(d)(2) and Fed. R. Civ. P. 56(c). Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law in Support of Motions of Plaintiffs for Partial Summary Judgment and Sanctions for Spoliation of Evidence, filed concurrently, also cites to admissions made by defendants in *Bailey*.  At the October 29, 2012 case management conference, this Court indicated its willingness to accept such prior admissions and discovery.  ECF No. 32 at 4–5.

## III.    STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .").[4]

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.[5]

---

[4] Here, as elsewhere, citations and internal quotation marks are omitted.

[5] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without

The moving party has the initial burden of establishing the absence of a material fact for trial. *Anderson*, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed . . . ." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][6] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that it is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

"As the parties invoking federal jurisdiction, [plaintiffs] bear the burden of showing standing by establishing, *inter alia*, that they have suffered an injury in fact, *i.e.*, a concrete and particularized, actual or imminent invasion of a legally protected interest. To survive a summary judgment motion, they must set forth by affidavit or other evidence specific facts to support their claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 351 (1992).

## IV.   PLAINTIFF FANNING HAS STANDING BECAUSE HE SUFFERED AN INJURY-IN-FACT.

CIPA establishes the legally protected interest in personal privacy:

---

controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[6] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Advisory committee notes on 2010 amendments.

1    The Legislature hereby declares that advances in science and

2    technology have led to the development of new devices and

3    techniques for the purpose of eavesdropping upon private

4    communications and that the invasion of privacy resulting from the

5    continual and increasing use of such devices and techniques has

6    created a serious threat to the free exercise of personal liberties and

7    cannot be tolerated in a free and civilized society.

8    The Legislature by this chapter intends to protect the right of

9    privacy of the people of this state.

10   Cal. Penal Code §630.

11   Thus, a California individual, such as Fanning, whose confidential

12   communication has been secretly recorded has suffered an in-fact injury as both

13   parts of *Lujan*'s injury-in-fact test have been satisfied.  As stated in this Court's

14   Order Denying Defendants' Motion for Summary Judgment, "[t]o succeed on a

15   private right of action for a violation of section 632, Plaintiffs prove three

16   elements: (1) an electronic recording of; (2) a confidential communication; and (3)

17   all parties did not consent.  *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–76

18   (2002)."  ECF No. 119 at 9.

19   An actionable violation of Cal. Penal Code §632 occurs at the moment a

20   surreptitious recording is made; a plaintiff is not required to prove actual damages

21   from the recordings and he could recover statutory damages for each occurrence.

22   *Lieberman v. KCOP Television, Inc.*, 110 Cal App 4th 156, 166–67 (2d Dist.

23   2003).  An allegation as to actual damages for the statutory tort of invasion of

24   privacy (Cal. Penal Code §§632, 637.2) is not a prerequisite to a good cause of

25   action because Cal. Penal Code §637.2 provides for the recovery of statutory

26   damages, regardless of whether the victim has suffered or been threatened with

27   actual damages.  *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (1st Dist.

28   1980).

**A.    Defendants Made Outbound Calls to Fanning Resulting in Telephone Conversations with Card Services' Representatives about Fanning's Credit Card Account.**

During all times relevant, Fanning, an individual, has been a resident of California.[7]  During 2010, plaintiff Fanning had a credit card account with HSBC Nevada with account number ending 3663.[8]  During 2010 and 2011, plaintiff Fanning received outbound collection calls about the account.[9]  Defendants used an automatic dialer to make outbound collection calls.[10]  The autodialer has the capacity to generate call logs showing the total attempts made on a particular account.[11]  During October 2, 2010 through December 15, 2010, defendants used an automated dialer to call Fanning over 300 times.  SUF ¶18.  On October 7, 2010, defendants called Fanning and a Card Services' representative spoke to Fanning about his delinquent credit card account ending 3663.[12]  On October 12,

_____

[7] Declaration of Representative Plaintiff Terry J. Fanning in Support of Plaintiffs' Motions for Partial Summary Judgment and Sanctions for Spoliation of Evidence (filed concurrently herewith), ¶2.

[8] Declaration of Travis Forrest in Support of Defendants' Motion for Summary Judgment, dated March 18, 2013, ECF No. 92-2, ¶¶10, 18, attached to Arleo Decl. at Ex. 8.

[9] CAP ONE 000022-28; CAP ONE 000057-58; Fanning Decl., ¶3; Declaration of Todd E. Folkes in Support of Defendants' Motion for Summary Judgment, dated March 18, 2013, ECF No. 92-3 ("Folkes 2013 Decl"), ¶¶4-7, attached to Arleo Decl. as Ex. 7; Transcript of deposition testimony by Todd E. Folkes in the *Bailey* Lawsuit on September 2, 2011 ("Folkes 2011 Dep. Tr.") at 13-14, attached to Arleo Decl. as Ex. 5.

[10] Declaration of Aaron E. Anderson submitted by the defendants in the *Bailey* Lawsuit, dated November 7, 2011, ¶3, attached to Arleo Decl. as Ex. 1.

[11] Folkes 2013 Dep. Tr. at 44:23-24, attached to Arleo Decl., Ex. 6; Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification, submitted by defendants in the *Bailey* Lawsuit on November 8, 2011, *Bailey* ECF. No. 92., at page 6:10-14, attached to Arleo Decl. as Ex. 3.

[12] CAP ONE 000027; CAP ONE 000057-58; Fanning Decl., ¶¶3-4; Defendant HSBC Card Services Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6,

2010, defendants called Fanning and a Card Services' representative spoke to Fanning about his delinquent credit card account ending 3663.[13]

### B. Fanning's Telephone Conversations with Card Services' Representatives Were Confidential Communications.

As stated in this Court's Order Denying Defendants' Motion for Summary Judgment:

> A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto," but excludes communications in which parties "may reasonably expect that communication may be overheard or recorded." Cal. Penal Code 632(c). Under this definition, a communication is "confidential" if a party to the conversation had an objectively reasonable expectation that the conversation was not being overheard or recorded. *Flanagan*, 27 Cal. 4th at 768. This issue is generally a question of fact. *See Kight v. Cash Call, Inc.*, 200 Cal. App. 4th 1377, 1398 (2011).

ECF No. 119 at 9.

Fanning had an objectively reasonable expectation that the conversation was not being overheard or recorded because he was unaware that defendants were recording his conversations. Fanning Decl., ¶¶5-11. Defendants did not notify

---

attached to Arleo Decl. as Ex. 9; Defendant HSBC Technology & Services (USA) Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as Ex. 10

[13] CAP ONE 000027; CAP ONE 000057; Fanning Decl., ¶¶3-4; HSBC Card Services Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as Ex. 9; HSBC Technology & Services (USA) Inc.'s Responses to Plaintiffs' Standing Interrogatories served December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as Ex. 10

1   Fanning that the calls could be recorded.  *Id.* Defendants stipulate to and otherwise

2   admit that no verbal advisory was given to any call recipient in calls they made

3   regarding HSBC Nevada accounts.  ECF No. 49 at 97:23-98:1–3 (defense counsel

4   stipulating on the record that: "Card Services relied on the underlying card

5   agreements.  The disclosure was not given orally.").[14]

6       Fanning did not and could not have had any reason to know that his

7   telephone calls were being recorded absent an explicit advisement by Card

8   Services' representatives at the outset of a telephone call.  Addressing the question

9   of what constitutes adequate notice, the court in *Kearney v. Salomon Smith Barney,*

10  *Inc.*, 39 Cal. 4th 95, 118, n.10 (2006) found that in the absence of a verbal advisory

11  at the outset of the call, "a California consumer reasonably would anticipate that

12  such a telephone call is not being [monitored or] recorded."  Citing the *Kearney*

13  opinion, Judge Gonzalez held in *Membrila v. Receivables Performance Mgmt.,*

14  *LLC*, No. 09-CV-2790-IEG (RBB), 2010 U.S. Dist. LEXIS 33565, at **7–8 (S.D.

15  Cal. Apr. 6, 2010), that a company can be liable for CIPA violations if it does not

16  adequately advise California individuals at the inception of a call that the call is

17  being recorded.  "Secret monitoring denies the speaker an important aspect of

18  privacy of communication."  *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200,

19  234–35 (1998) (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 813–14 (1979); *Ribas*

20  *v. Clark*, 38 Cal. 3d 355, 360–61 (1985)).

21      In their March 26, 2013 summary judgment motion, defendants argued that

22  "no objectively reasonable expectation of privacy exists because Plaintiffs were

23  made aware, through the CMA, that their calls may be monitored or recorded."

24  ECF No. 119 at 9 (order denying motion); *see also* defendants' memorandum

25  ───────────

26      [14] *See also* Transcript of testimony by Alan Vidal Deleon during Rule 30(b)(6) deposition in the *Bailey* Lawsuit on September 13, 2011, at 46, attached to Arleo Decl. as Ex. 12; Declaration of Brenda J. Wolfe submitted by the defendants in the *Bailey* Lawsuit, dated November 7, 2011, ¶10, attached to Arleo Decl. as Ex. 15.

28

1 (ECF No. 92), §III. D.1. and ECF No. 92–2 attaching CMAs purportedly sent to

2 plaintiffs. Rejecting defendants' argument in part because the CMA did not

3 identify Card Services, this Court held "[t]he CMAs do not provide notice of

4 possible recordings of calls with Card Services." ECF No. 119 at 10.

5 Fanning disputes that he received such a CMA containing the privacy

6 provision put forth by defendants. Fanning Decl. ¶8. Even if this Court found

7 the purported privacy provision somehow applied to defendants here, language

8 stating only that calls "may be monitored or recorded" does not constitute

9 adequate notice that the calls would be recorded. The California Court of

10 Appeal, citing *Kearney*, held that conditional language indicating calls "may"

11 be recorded is ***not*** adequate disclosure. *Kight*, 200 Cal. App. 4th at 1399.[15]

12 Thus, even if Fanning did receive the privacy provision submitted to support

13 defendants' 2013 argument — which he did not — the privacy provision did

14 not adequately notify Fanning that any of his calls would be recorded.

15 **C.    Defendants Recorded Fanning's Telephone Conversations.**

16 As discussed above, Card Services' representatives called and spoke to

17 Fanning on October 7, 2010 and October 12, 2010. [16] At Card Services' direction,

18 Tech Services randomly recorded 3%–30% of outbound collection calls (referred

19

20

---

21    [15] Ninth Circuit law dictates that under the circumstances existing here,
22 federal courts are required to abide by state court appellate level decisions.
*Ryman v. Sears Roebuck & Co.*, 505 F.3d 993, 994–95 (9th Cir. 2007).

23    [16] CAP ONE 000027; CAP ONE 000057-58; Fanning Decl., ¶¶3-4;
24 Defendant HSBC Card Services Inc.'s Responses to Plaintiffs' Standing
Interrogatories served December 23, 2013, response to Interrogatory S6,
25 attached to Arleo Decl. as Ex. 9; Defendant HSBC Technology & Services
(USA) Inc.'s Responses to Plaintiffs' Standing Interrogatories served
26 December 23, 2013, response to Interrogatory S6, attached to Arleo Decl. as
Ex. 10; Transcript of January 11, 2012 testimony by Tracy Lyn Watkins at
27 148-149 (stating "HN" could only result from customer conversation), attached
to Arleo Decl. as Ex. 13.

28

1  to as "part-time" recordings).[17]  Beginning May 20, 2010, in the *Bailey* case, five

2  part-time calls per call center per day were preserved in buckets set aside for

3  plaintiff's counsel.[18]  By November 7, 2011, at least 150,000 part-time recordings

4  were saved under the *Bailey* protocol.[19]

5         As set forth in plaintiffs' accompanying Motion for Sanctions for the

6  Spoliation of Evidence, after an individual settlement agreement in the *Bailey* case

7  had been reached on March 7, 2012, before the case was dismissed, counsel for

8  plaintiffs sent an evidence preservation letter to defendants' counsel putting

9  defendants on notice of this impending class action lawsuit.  On March 8, 2012, the

10  *Bailey* lawsuit was dismissed.  On March 21, 2012, another class action, *Afrasiabi*

11  *v. HSBC Bank USA*, was filed alleging the same CIPA claims.

12         Despite these facts, defendants admit that in April 2012, less than one month

13  before HSBC's credit card business was transferred to Capital One, the "*Bailey*

14  protocol" was terminated and the ordinary purge procedure for all part-time

15  recordings was implemented.[20]

16  _____

17         [17] HSBC Card Services Inc.'s Responses to Plaintiffs' Standing
   Interrogatories served December 23, 2013, response to Interrogatory S6,
18  attached to Arleo Decl. as Ex. 9; HSBC Technology & Services (USA) Inc.'s
   Responses to Plaintiffs' Standing Interrogatories served December 23, 2013,
19  response to Interrogatory S6, attached to Arleo Decl. as Ex. 10; Folkes 2013
   Decl., ¶4 attached to Arleo Decl. as Ex. 7.

20         [18] HSBC Card Services Inc.'s Responses to Plaintiffs' Standing
   Interrogatories served December 23, 2013, response to Interrogatory S6,
21  attached to Arleo Decl. as Ex. 9; HSBC Technology & Services (USA) Inc.'s
   Responses to Plaintiffs' Standing Interrogatories served December 23, 2013,
22  response to Interrogatory S6, attached to Arleo Decl. as Ex. 10; Transcript of
   May 20, 2010 Hearing in the *Bailey* Lawsuit, at 28:7-9, 30:20-31:5, 36:24-
23  37:6, attached to Arleo Decl. as Ex. 2.

24         [19] Declaration of Brenda J. Wolfe submitted by the defendants in the
   *Bailey* Lawsuit, dated November 7, 2011, Bailey ECF No. 92-7 ("Wolfe 2011
25  Decl."), ¶14, attached to Arleo Decl. as Ex. 15.

26         [20] HSBC Card Services Inc.'s Responses to Plaintiffs' Standing
   Interrogatories served December 23, 2013, response to Interrogatory S6,
27  attached to Arleo Decl. as Ex. 9; HSBC Technology & Services (USA) Inc.'s
   Responses to Plaintiffs' Standing Interrogatories served December 23, 2013,
28

Thus, the recordings as well as the records associated with Fanning's October 7, 2010 and October 12, 2010 conversations with Card Services' representatives were purged by defendants while they were on notice of this impending litigation.  The purged data is relevant evidence.  Without this data, defendants would be unable to find any recordings or records of recordings of Fanning's conversations.  Indeed, in opposition to Lindgren's motion to intervene, defendants took the position that plaintiffs lack standing because "[defendants] can find no record of any such recordings."  ECF No. 184 at 2:10–11 (defendants' opposition memorandum); ECF Nos. 184–2, ¶¶4–5 and 184–3, ¶11 (declarations in support).

Filed concurrently herewith is Plaintiffs' Motion for Sanctions for the Spoliation of Evidence.  Therein, plaintiffs request that an appropriate sanction for defendants' misconduct would be to impose a presumption that the destroyed evidence would have been adverse to defendants because defendants destroyed evidence with notice and knowledge of impending litigation.  As stated therein, plaintiffs request the Court impose adverse inferences against defendants deeming as established the facts that defendants' electronically recorded credit card collection calls between Card Services' representatives and Fanning which occurred on October 7, 2010 and October 12, 2010.

**D.     Fanning Did Not Consent to the Recordings.**

Fanning did not consent to the recordings of his telephone conversations with Card Services' representatives.  Fanning, ¶7.  Defendants admit that no verbal advisory was given to any call recipient in calls they made regarding HSBC Nevada accounts.  Defense counsel has stipulated on this record that: "Card

---

response to Interrogatory S6, attached to Arleo Decl. as Ex. 10; Folkes 2013 Dep. Tr. at 54-62, 103, attached to Arleo Decl. as Ex. 6.

Services relied on the underlying card agreements.  The disclosure was not given orally." ECF No. 49 at 97:23-98:1–3; *see also* n. 14, *supra*.  ECF No. 49 at 98:1–3.

In their March 26, 2013 motion for summary judgment, defendants argued that via a privacy provision in the CMAs attached to one of their supporting documents, plaintiffs expressly agreed that Card Services' calls with HSBC Nevada could be monitored or recorded.  ECF No. 92, §III. D.1. (citing supporting declaration ECF No. 92–2, Exs. A–C).  Plaintiffs disputed the admissibility of the CMAs cited by defendants, but addressed the policy provision in the interest of resolving the matters on the merits.  ECF No. 109 at 18 n.4.  The Court rejected defendants' argument and held that CMAs "do not provide notice of possible recordings of calls with Card Services."  ECF No. 119 at 11–13.  Fanning contends he never received a CMA with such terms.  Fanning, ¶¶8-10.  Indeed, the HSBC Nevada CMA he did receive, and which was produced as part of Plaintiffs' Initial Disclosures on July 26, 2012, contains no such privacy provision.  Fanning, ¶8.  This agreement is attached to the Fanning Declaration.

Further, even if this Court somehow now finds that Fanning is bound by the CMA containing the privacy provision relied upon by defendants, defendants cannot be exempt from CIPA liability based on the agreement.  California Civil Code §1668 states:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, *or violation of law, whether willful or negligent, are against the policy of the law*.

Cal. Civ. Code §1668 (emphasis added).

Fanning cannot be deemed to have waived his statutory rights and consented to defendants' recordings.  California Civil Code §1668 makes it illegal for a party to exempt itself from liability for intentional or illegal misconduct.  Nevada law cannot be used to avoid or exempt defendants from the prohibitions of California

law that make it illegal for defendants to intentionally record confidential communications without two-party consent.  *See America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 15 (2001) (choice of law and forum selection clause that resulted in waiver of statutory rights not enforceable where it conflicted with California law that protected such rights).  Thus, there is no genuine issue of material fact that Fanning neither knew about nor consented to the recording of his confidential communications.

**IV.    CONCLUSION**

For the reasons stated above, plaintiffs respectfully request an order treating facts as established in the case and finding that plaintiff Terry J. Fanning has standing to pursue this lawsuit.

DATED: March 3, 2014

Respectfully submitted,

ARLEO LAW FIRM, PLC

/s/ *Elizabeth J. Arleo*
ELIZABETH J. ARLEO

16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
(858) 674-6912
(760) 789-8081 (fax)
elizabeth@arleolaw.com

AZRA Z. MEHDI
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 (fax)
azram@themehdifirm.com

STEPHEN C. MAXWELL (phv)
RANDALL E. TURNER (phv)
BAILEY & GALYEN
1300 Summit Avenue, Suite 650
Ft. Worth, TX 76021
(817) 417-9660
(817) 719-9484 (fax)
smaxwell@gaylen.com
rturner@gaylen.com

1                                    Attorneys for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2014, I authorized the electronic filing of the following documents:

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF STANDING; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 3, 2014.

/s/Elizabeth J. Arleo
ELIZABETH J. ARLEO